EBEN LURTZ *vs.* WILLIAM H. C. HARDCASTLE, HARRY L. GREAVES and ROBERT L. CUMMINS, Board of Registration of Election District of Duck Creek Hundred, Kent County.

Kent County, October Term, 1894.

**Mandamus, where nugatory.**—A peremptory writ of mandamus will not be granted where if granted it would prove nugatory and unavailing.

**Mandamus, Registration Officers.**—Where a Board of Registration, upon rehearing adjudges a person registered to be disqualified and strikes his name from the registration books, a peremptory writ of mandamus will not be ordered to compel the Board to restore the name after it has certified to the books of registration and delivered them to the Sheriff before service of writ upon the members of the board.

This was an application for a writ of peremptory mandamus based upon an affidavit setting forth the following facts : That Eben Lurtz was on the fifth day of October, A. D., 1894, a citizen of the State of Delaware, above the age of twenty-two years, resident in Kent County and East Election District of Duck Creek Hundred. That he had resided in said state for —— years, and in said county for more than one month prior to the said sixth day of October, had paid a county tax within two years prior to the sixth day of November, A. D., 1894, which had been assessed against him more than six months before the said sixth day of November ; that the petitioner's residence was not acquired by being stationed in any garrison, barrack, or military or naval station within said State, and that he was not on said sixth day of October and never was, an idiot or an insane person, pauper, or a person convicted of a crime deemed by law a felony. That on the said sixth day of October he appeared before William H. C. Hardcastle, Registrar for an election district of Duck Creek Hundred, in Kent County, at the place duly appointed and advertised for the registration of voters, and applied to be registered as a qualified voter, and that after establishing his qualification as above stated, and producing a

receipt properly signed and stamped for the payment of a county tax within two years prior to the sixth day of November A. D. 1894, which had been assessed against him at least six months before the said sixth day of November, he was then and there registered by said William H. C. Hardcastle, Registrar, as a qualified voter ; that being so registered, an affidavit was presented on the twentieth day of October A. D. 1894, to the Board of Registration aforesaid, setting forth that in the opinion of the affiant that the petitioner was illegally registered in said election district as a qualified voter, for the reason that in the opinion of the affiant the tax receipt upon which the petitioner was qualified as aforesaid, was not a receipt for a " tax " such as is contemplated by the constitutional provision respecting the payment of a " county tax " to qualify an " elector " to vote in this State for State and County officers, and that upon such affidavit the petitioner was notified to appear before the Board of Registration aforesaid, on Saturday, the twenty-seventh day of October, A. D. 1894, to show cause why his name should not be stricken from the voting books of qualified voters of said Duck Creek Hundred ; that by reason of the receipt of said notice the petitioner appeared before the said Board of Registration at the time and place specified, and insisted that his name was properly entered in the register as a qualified voter, and that it should not be stricken from the voting books of qualified voters. Whereupon the said Board of Registration, upon the production of the said affidavit and inspection of the same, and for the reason therein set forth, and for no other or further reason, notwithstanding the protest of the petitioner, and in derogation of his rights, wrongfully, wilfully and illegally declared itself satisfied that the petitioner was not a qualified voter and did draw a line through the petitioner's name, as written in the column headed " Qualified Voter ;" and did also, in the column headed " Remarks," opposite his said name, write the words, " adjudged disqualified on revision by the Board," and did also draw a line through his name as first entered.

Wherefore he prayed that a peremptory writ of mandamus of

the State of Delaware be issued directed to the said respondents, constituting the said Board of Registration of Duck Creek Hundred, commanding them and each of them as follows, to wit. :

1. To expunge the line drawn in ink through the name of the petitioner as written in the column headed " Qualified Voter," and also to expunge the words " adjudged disqualified on revision by the Board," written in the column headed " Remarks," opposite to the petitioner's name and to expunge the line drawn through the petitioner's name as first entered, and also to expunge the causes of the petitioner's disqualification as stated in the column headed " Disqualified," and also to expunge the entry of the date when his disqualification was ascertained.

2. And that his name should be restored to the list of qualified voters and remain and appear thereon in the same manner as it was originally entered by the Registrar.

The respondents in their answer admitted that the facts set forth in the petition were substantially correct except that the said petitioner had paid a county tax within two years prior to the sixth day of November, A. D. 1894, which had been assessed against him more than six months before the said sixth day of November, A. D. 1894, and was thereby qualified to enjoy the right of an elector at the general election to be held on the said sixth day of November, A. D. 1894, which allegations were expressly denied.

The respondents averred that the said Board of Registration of which they, the said respondents, were members, did, acting in their judicial capacity, to decide and determine the qualification of electors at the coming general election in this State, after a full hearing, examination and inquiry, having taken careful legal advice, and after due consideration, being satisfied that the relator was not a qualified voter, did adjudge the said relator to be improperly registered as a qualified voter, the reason for said decision being that the said alleged tax receipt upon which the said relator secured

the registration of his name as a qualified voter, was not a receipt for a tax such as is contemplated by the constitutional provision respecting the payment of a tax as a qualification of an elector at the coming general election, the tax assessed to the said relator for the year A. D. 1892, having been returned to and allowed by the Levy Court of Kent County, in March, 1893, as delinquent, and thereby extinguished as a tax and thereafter uncollectable, and did draw a line through the said relator's name as written in the column headed " Qualified Voter," and did also in the column headed " Remarks" opposite his said name, write the words " Adjudged Disqualified."

As a further answer the said respondents averred that they have completed their work as a Board of Registration ; have compared their books of registration after their last day of sitting, to wit : October 27th, 1894, have signed their said books and have made the necessary affidavits and certificates thereto, as had also the other members of said Board of Registration, and the same have been by the said Registrar delivered to the Sheriff of Kent County, as by law directed to be done, and that the same are no longer in their custody nor subject to their powers as members of said Board of Registration, and were already delivered as aforesaid prior to the service of the rule in this case ; and that the said Board of Registration, having performed all the duties enjoined upon it by law, has already adjourned, and had, before the service of the rule in this case, and are therefore *functus officio ;* and that to make any alterations in any of said books of registration at this time, would entail upon them the penalties of the law as set forth in Sec. 20, of Chap. 38, Vol. 19, Laws of Delaware.

The answer of the said respondents further represented that having acted in their judicial capacity as members of the said Board of Registration, they are advised and believe that this honorable Court had no jurisdiction in the premises.

The question whether the receipt was for such a tax as was contemplated under the Constitution arose out of the following provisions of the Constitution and Statutes.

Art. IV, Sec. 1, Constitution of Delaware, provides that every citizen " of the age of twenty-two years or upwards, having resided in the State one year next before the election, and the last month thereof in the county where he offers to vote, and having within two years next before the election, paid a county tax, which shall have been assessed at least six months before the election, shall enjoy the right of an elector;    *    *    *    *    *    *
*Provided*, that no person in the military, naval or marine service of the United States, shall be considered as acquiring a residence in this State, by being stationed in any garrison, barrack, or military or naval place or station within this State; and no idiot or insane person, pauper, or person convicted of a crime, deemed by law felony, shall enjoy the right of an elector.

Chapter 371, sections 9 and 10, volume 14, Laws of Delaware, provides as follows :

SECTION 9. That it shall not be lawful for any assessor or any Levy Court, upon the personal application of any one or otherwise to place upon the assessment in any hundred the name of any person who having failed to pay the county tax assessed against him or her for the preceding year was returned and allowed as a delinquent until after the expiration of the twelve months from the time such allowance as delinquent was made by the Levy Court.

SECTION 10. That it shall be the duty of the Clerk of the Peace of each of the counties of this State to certify, under his hand and official seal, and deliver to the Sheriff of his county in the month of August, an alphabetical list for each of the hundreds of his county of the delinquent list so made and returned by the Collector at the March session of the levy court in the year of holding the general election.

Chapter 372, Sec. 1, Vol. 14, Laws of Delaware, provides that the Levy Court, upon its appearing to it that a collector has complied with the law in giving notice in January of each year of his sittings to receive taxes, and that he did attend at the times and places in accordance with said notice for the reception of taxes " to allow said collector as delinquencies the taxes uncollected by him,

and the names of such delinquents shall be dropped from the assessment list by the Levy Court and shall not be placed thereon again for a period of twelve months from and after the date of such allowance, *Provided*, that the provisions of this Section shall apply to persons assessed and liable to pay poll tax.

Chap. 30, Vol. 19, Laws of Delaware, repeals the above Sec. 9 and Sec. 10, of Chap. 371, Vol. 14.

Chap. 31, Vol. 19, Laws of Delaware, repeals Sec. 1, of Chap. 372, Laws of Delaware, and provides also that the collectors shall sit on days of registration to receive taxes.

Chap. 567, Vol. 19, Laws of Delaware, passed March 23, 1893, repeals Chap. 30, Vol. 19, and re-enacts Secs. 9 and 10 of Chap. 371 of Vol. 14, Laws of Delaware.

Chap. 568, Vol. 19, Laws of Delaware, passed March 31, 1893, provides:

That the Levy Courts of the counties of Kent and Sussex, in this State, at their March session in the year A. D. 1893, or at any adjourned term thereof during the month of April thence next succeeding, are hereby authorized and directed, upon proof being made to them by the affidavit of the several collectors of said counties for the year A. D. 1892, to be filed in the office of the Clerk of the Peace for the respective counties, that he had given public notice as by the then existing law required, stating therein the times and places at which such collector would attend for the purpose of receiving taxes then due and unpaid, and that in pursuance thereof he did attend at the times and places so specified for the reception of taxes, to allow as delinquencies the taxes uncollected by the said collector, and the names of the delinquents so allowed shall be dropped from the assessment list by the said Levy Courts and shall not again be placed thereon for the space of one year from and after the date of such allowance; *Provided*, That this section shall apply to poll taxables only.

Chapter 569 Vol. 19, Laws of Delaware, passed April 14th, 1893, is as follows:

WHEREAS, it is not the desire of the General Assembly by

the passage of the act entitled " A supplement to an act entitled 'An act in relation to the collection of taxes in Kent and Sussex Counties,' passed at Dover, March 23, 1893," passed at Dover, March 31, 1893, to deprive any taxable of Kent or Sussex county of the opportunity to pay his tax for the year 1892, should he wish so to do, nor to deprive either of said counties of the revenue to be derived therefrom.

AND WHEREAS this General Assembly proposes to give every of such taxables an ample opportunity to pay his said taxes, therefore be it enacted.

SECTION 1. That the Clerks of the Peace of the counties of Kent and Sussex shall make a certified copy of each of the lists of delinquent taxables for the respective hundreds and collection districts of said counties which were or shall be allowed by the respective Levy Courts of said counties in settlement with the collectors of county taxes for the year 1892 at their March session in 1893, or at an adjourned session thereof, within ten days after the passage of this act, and after the said Levy Courts shall have allowed the said delinquents. Said certified copies of delinquent taxables for the year 1892, together with the collectors' seals shall, within the ten days above specified, be delivered by the said Clerks of the Peace to the collectors of county taxes for the year 1893, giving to each of said collectors the certified list and collector's seal of this particular hundred or collection district. To the name of each taxable on said lists shall be annexed the amount of tax due and unpaid by him for the year A. D. 1892.   *   *   *   *   *   *

Each of said collectors to whom the said lists of delinquent taxables shall be delivered shall immediately thereafter give five days public notice by advertisement posted in ten or more of the most public places in his hundred or collection district, stating in said notice the time and place at which he will attend for the reception of the delinquent taxes for the year A. D. 1892, as required by this act. The time specified in said notice shall be prior to the Saturday next preceeding the third Tuesday in May, A. D. 1893, and the place shall be some convenient and suitable place in his hundred.

Each of said collectors, in pursuance of said notices, shall sit for two successive days and for eight hours each day, at the time and place designated in said notices for the purpose of receiving and shall receive such delinquent taxes as shall be tendered to him in person by any of the said delinquent taxables and shall receipt for the same in the manner provided by law in the collection of other county taxes. Each of said collectors shall be liable on his official bond for the payment of the taxes collected by him under the provisions of this act.

Every of said collectors shall make return of his said delinquent list, together with the moneys collected thereon, to the Levy Court of his county at a special meeting thereof on the third Tuesday in the said month of May, A. D. 1893, which the said Levy Courts are hereby required and directed to have and hold, and the said Levy Courts shall then receive the said returns and make proper settlement with the said collectors for the said delinquent lists so returned; and it shall be the duty of the Levy Court of each of the said counties of Kent and Sussex, upon proof being made to them by the affidavit of the collector of his hundred or collection district and filed in the office of the Clerk of the Peace for the respective county, setting forth that such collector has given notice, as required by this act, and in pursurance thereto he did attend for the reception of taxes at the times and places designated in such notices, to allow said collector as delinquencies the taxes uncollected by him, and the names of every such delinquent taxable who shall have failed to pay his said taxes for the year 1892, as herein provided he may, shall be dropped from the assessment list by the said Levy Court and shall not be placed thereon again for the period of one year from and after the date of such allowance.

       *       *       *       *       *       *       *

The collectors' duplicates for the collection of county taxes for the year A. D. 1893 shall not be delivered to the respective collectors of county taxes for the counties of Kent and Sussex till they shall have made full settlement with the Levy Court of their respective counties for the delinquent taxes collected by them re-

spectively, as hereinbefore provided.    And the name of every such delinquent taxable who shall pay his taxes for the year 1892, as herein provided he may, shall be placed on the assessment list and also on the duplicate to be issued to the collector of county taxes for the year A. D. 1893 by the Levy Court of his county.    Said additions may be made in the form of supplements to said assessment lists and duplicates; *provided however* that this act shall apply to poll taxables only.

Chap. 38, Vol. 19, Laws of Delaware, providing for registration of voters, provides that the registrars shall within three days after their last sitting, compare their books of registration, make and affix the proper certificates, and within one day thereafter to deliver one copy of said books to the sheriff, who should deliver them to the election officers, the registrar retaining duplicate copies.

At the hearing it appeared that the petitioner, Eben Lurtz, had been dropped from the assessment list by the Levy Court under the provisions of chapter 368, vol. 19, Laws of Delaware. That he was on the certified list of delinquent taxables for the year 1892, which was made and delivered to the collectors under the provisions of chapter 569, vol. 19, Laws of Delaware, and had paid the delinquent tax to the collector, and had his receipt for the same according to the provisions of said act.

That the Board of Registration completed the registration on Saturday, the 27th of October. and on the same day compared the books, affixed certificates as prescribed by law, and that the Registrar delivered the books to the Sheriff before proceedings in mandamus were begun.

*B. Nields*, for the relator, contended that there were three questions to be decided by the Court.    First, was the tax a legal tax— that is, such as is contemplated by the constitution to qualify a person to vote? second, whether the Board of Registration was still in existence or *functus officio?* third, whether the act was such a judicial act in the exercise of a discretion that it cannot be reviewed by this Court ?

The petitioners claim that the tax was a constitutionally assessed and paid tax, and so plainly so that no question of a judicial nature could arise; that the officers are still in power; that sets of books are in the hands of two of the officers.

The law as it stood in 1852 and until the passage of the law of 1873 provided that the Levy Court should settle accounts with the collectors in March of each year and allow delinquent lists. Only by death or removal could the name of a person be stricken from the list. In 1873 the law was passed which allowed the Levy Court to strike the names of delinquents from the list. There was no other provision for collecting taxes except as provided in that act. When the collector made his return of delinquents there was no power to collect further. In 1891 the Legislature passed a law repealing a portion of the delinquent laws. Under this new law of 1891 a man was not dropped for a failure to pay taxes, but he was put upon the assessment list and was returned in 1893 as a delinquent. There was no provision at that time to keep the man so returned off the assessment list.

On March 23, 1893, the Legislature passed a law re-enacting the delinquent laws. The law provided that delinquents should be dropped in the future, but did not apply to those returned in 1893, as the time for dropping delinquents for that year had expired. On March 31, 1893, another law was passed which allowed the Levy Court to strike from the assessment those returned as delinquents in 1893. This act was repealed by an act passed on April 14, 1893. The last law provided that every one returned as a delinquent in 1893 should be allowed to pay his taxes, and those who failed to do so were to be returned as delinquents and they dropped from the assessment. The collector was liable for the taxes in his official bond, and was to receipt for the taxes the same as for other county taxes. Under this act the delinquent lists of the year 1892 was not ascertained by law until this last law had been complied with. Those who paid under the act were not delinquents and were not dropped from the assessment for 1893. This petitioner was one of the class of men who paid their taxes under the

act and was not dropped from the assessment list for 1893. His name was also placed on the duplicate for 1893. As the Court has ruled again and again, the power that imposed the tax of 1892 upon the petitioner, the Legislature, made it a tax for county purposes, payable into the treasury of the county according to law. It was not a contribution, but it was a tax laid by authority of law. It was a county tax, and the Legislature wiped out all the penalty for being a delinquent. Under the authority of this State the Legislature said he might pay it to the authorized officers of the State. The bonds of the collectors were made to cover the tax. The officers of the State cannot say that they have received a man's tax, but do not allow him to stand on an equal footing with other taxables.

This man going before the registrar with his tax receipt, and the registrar making him as a qualified voter, there was a notice given to the Board of Registration that in the opinion of the affiant he was not entitled to qualify because he had paid a tax such as described. There was nothing over which the registrars could exercise a judicial act. The board is not clothed with such judicial power as to pass upon the question of the constitutionality of a law. If they were and some decided one way and some another what would be the law? The seal of the collector and his name appearing upon the receipt left no discretion with the Board of Registration. They were required under the law to allow this man's name to remain on the record.

There being no other redress for this taxable, he comes to the Superior Court and asks for a mandamus to compel the registrars to replace his name.

The duty of the Registrars was clear, and this being so they struck his name from the list. Now they ask: "What are you going to do about it? The time for which we were appointed has expired." The law provides that it shall be the duty of the Board within three days after they have completed their last sitting to sign a certificate attached to the books and return them to the sheriff. This they say they have done and did before the rule was

issued. Mr. Henry Ridgely said yesterday that he appeared for these respondents, and they had knowledge that the petition was filed yesterday morning. These respondents stood here by their counsel and appeared in court. To make it legally they must have made their return after the petitions were filed. They could not have made them on Saturday. If they did make the returns on Monday, when did they deliver the books to the sheriff? If, according to law, they were delivered to-day, and after the counsel had appeared for them and they have no further duties.

The Board under these facts cannot be allowed to say that its duties have ceased and it cannot be compelled to correct its errors. And if it refuses the proper remedy is by mandamus. The courts will order the writ to compel an officer to perform a public duty. Tapping on Mandamus, Sec. 12. *Rex vs. Barker, et al.,* 3 Burrow 1762; *Exparte Cole,* 28 Ala. 50; *Exparte Robins,* 29 Ala. 71; *Rex vs. Morris,* 1 Lord Raymond; *Davis vs. McKestry,* 5 Nev. 369; *Humbold County vs. Churchill,* 6 Nev. 30.

*Smithers,* for the relator, contended that when any person, or persons, corporate or incorporate—any body known to the law—failed to perform its duty under the law, affecting the rights of individuals and there is no other remedy provided by law, the courts will compel the performance by the writ of mandamus. *State vs. Mayor and Council of Wilmington,* 3 Harring. 294; *State vs. Wilmington Bridge Co.,* 3 Harring. 312. That in this case the registrars must comply with the law, and if it were a purely discretionary matter, this being a higher court can revise the decision.

It is the duty of the board to decide whether any or all the facts exist that are necessary to exist to qualify an elector under the Constitution, and in absence of fraud this decision is final. It is their duty to decide whether or not those facts qualify the person as an elector under the Constitution and laws of the State. If they however decide that under the law the facts proven do or do not

establish the right of an elector, contrary to what the Court say is the effect of those facts under the constitution and law they will be compelled by mandamus to make this decision upon the facts found in accordance with their legal effect under the law as interpreted by the Court.

This money paid to the county was not a donation. The Legislature called it a tax and intended that its payment should release these people from the delinquent list. It was a tax paid as a tax. Suppose these three Registrars come to the conclusion that the Legislature did not know what it was doing and decided this was not a tax and the Court decided that it was a tax. Suppose that the Court decides that these Registrars erred. Is it possible that there is no remedy to correct this error? If the Court comes to that conclusion will the Court allow the abuse to go uncorrected? It is the power and the right of the Court to correct such abuses. It would be trifling to say that these men have a discretion to violate the law. If these men's actions cannot be reviewed, and if they cannot be compelled to act according to law, then a writ of mandamus is useless. Miserable would be the condition of any community if a mandamus could not issue in such a case. If men are judges, they must judge according to law, and the Superior Court has a right to review the judgment of these men. They make no mistake in fact, for the facts are admitted. They judged the law and they erred in their judgment. These men assumed to decide a question of law and did not decide legally. It follows that if they made a mistake in law then this Court should correct the abuse. If there is a difference of opinion between the Registrars and the Court over this matter, and the Court decides this was a tax as contemplated by the Constitution, which is to give way. Could it be pretended that the Registrars' opinion of the law, instead of that of the Court, on a question of law should stand?

Because if these people do not follow the law they are punishable under the law, does not prevent the issuance of a mandamus by this Court. The petitioner has a right to be put back on the

list of qualified voters where he belongs. In such cases the person injured desires specific relief more than he desires to have some one punished. He is here asking to be relieved from a mistake in law and to be restored to his rights. These Registrars could be punished by indictment, but that will not restore these petitioners to the registration lists or restore them to their rights. If the Registrars have done wrong they may suffer the penalty rather than restore the names. The petitioners have the right to vote, and they ask that their names be restored because they want their rights. An indictment will not restore these. A mandamus will, and only a mandamus will restore them.

Upon the proposition of the other side, as given in their answer, that the decision of the Registrars was on a question of law, and a question of law as to whether the tax in question was one in the contemplation of the constitution, they have no right to misjudge a question of law.

*Hughes* (*Henry Ridgely* and *Vandegrift* associated with him in the brief), for the respondents, contended :

This Board of Registration is a judicial body, and being such has a discretion in the matter, and mandamus will not lie to affect or review their judgment in the matter.

That this board is a judicial body is conclusively shown by the statutes creating it.

It is to judge of the qualifications of electors under the constitution and laws of this State; Ch. 38, vol. 19, §§ 2 and 3.

Duties as a court of appeal, *ib.*, § 10, paragraphs 5, 6, 7 and 9.

That this board is a judicial body has been recently decided by this court; *Hastings vs. Henry,* Supra, 287. (October 6, 1894 ;) *Freeman vs. Selectmen of New Haven,* 34 Conn. 415 ; High on Ex. Rem., 39 ; *Fausler vs. Parsons,* 6 W. Va. 494.

Mandamus will not be granted against a judicial body ; High Ex. Rem. 25, 26, 48 ; Short on Mandamus (Blackstone series),

258, 261; *Queen vs. Justices of Middlesex*, 36 Eng. Com. Law, 197.

Mandamus will not lie against an official the exercise of whose functions is dependent upon his interpretation of a statute, even though that interpretation be different from the construction which this Court would put upon it. *Dunlap vs. Black*, 128 U. S. 47, 48; *Decatur vs. Paulding*, 14 Peters, 515; *King vs. Bishop of Lincoln*, 2 Term 338, note a; *American Gas Ins. Co. vs. Fyler*, 60 Conn. 459, 461, 462.

The decision, however erroneous, of the proper officer or tribunal, on a matter within his or its jurisdiction, cannot be called into question by mandamus. Short on Mandamus, 257, 261, 264 and 822. *King vs. Justices etc.*, 7 Term 467; High, Ex. Rem. 148; *People vs. Judges*, 20 Wend. 659, 660; *State vs. Barnes*, 25 Fla. 308, 309, 310; *Ex parte Secombe*, 19 Howard 15.

The application must be to compel the performance of some duty which has not been done; it must not be to order the undoing of an act which has been done. Shortt, Mand. 227, 250, 263 and 296; *Peat's Case*, 6 Mod. 229; *People vs. Judges*, 20 Wend. 659, 660 and 663; *Ex parte Secombe*, 19 Howard 15; *King vs. Mayor etc., of Hythe*, 1 Nev. and P. 239.

If the prayer of the petition in this case, to expunge the markings of removal from the Registers, and thus place the name of the relator upon the Registers as a qualified voter, he granted, it will thereby "take away their (the Road's) discretion and judgment, and substitute in lieu thereof the discretion and judgment of this Court." "It would, in fact, be making this Court the Register in stead of the one named and appointed under the act." · But mandamus will not lie to make up the judgment or control the discretion of the inferior tribunal. *Hastings vs. Henry, Supra*, 287; *Mayor vs. Rainwater*, 47 Miss. 550; *Swan vs. Gray*, 44 Miss. 397; High, 42, 141 and 148; *King vs. Justices of Kent*, 14 East, 396; *King vs. Bishop of Litchfield*, 7 Mod. 218; *Decatur vs. Paulding*, 14 Peters 515; *Chase vs. Blackstone, Can. Co.*, 10 Pick., 246;

*State vs. Young*, 31 Fla. 602; Spelling on Ex. Rem., 1384 and 1467.

Even though the relator have no other full and adequate remedy, mandamus does not necessarily lie. *People vs. Judges*, 20 Wend. 662; *Hastings vs. Henry*, Spelling, Ex. Rem. 1373.

The books of Registration having been delivered to the sheriff and being no longer in their possession as a Board, this Court will not command the respondents to make alterations in said Registers and voting books in violation of the express words of the act, (Sec. 20). Spelling, Ex. Rem. 1378; *Clark vs. Buchanan*, 2 Minn., 298.

A mandamus will not lie against a body which has performed all the duties entailed upon it by law, and which has become *functus officio*. *Mason vs. School District*, 20 Vt. 487; *McGuire Waterman*, 5 Nev. 328; *Clark vs. Buchanan*, 2 Minn. 298.

*Was the receipt held by the relator, such a receipt for such a tax as is contemplated by the Constitution?* The law prior to 1873 made no provision for dropping delinquents except for removal or death. The Levy Court allowed the delinquent, and the collector was prohibited from thereafter receiving the tax. It was thereafter extinguished. The act of 1873 provided that upon the collector's sitting at certain times, as advertised, it should be the duty of the Levy Court to allow his delinquents, and they should be dropped, etc., and not placed thereon for twelve months from date of allowance. The law continued thus until the act of 1891, Vol. 19, Page 78, which repealed the act of 1873, and the law as it stood prior to 1873 was revived whereby delinquents were allowed, placed on assessment list, and only dropped for death or removal. This continued until the law of March 23d, 1893, Vol. 19, Page 650, whereby the act of April 10th, 1873, was re-enacted, but the delinquents were to be dropped by sittings in January and by the law of 1891. The collectors had the right to sit both in January and February, and some of them had sat in February. It thereby became necessary to pass a law by which delinquents could be dropped according to the sittings of those collectors who had sat

in February, and so the act of March 31st, 1893, providing that whenever collectors should make the affidavit under the law of 1891, the delinquents should be allowed and dropped for one year. Then arose the claim that to thus drop men for one year, and deprive them of the right to qualify to vote in 1894 by keeping them off the list of 1893, was unfair and would be the loss of revenue to the county. The Legislature responded by the act of April 14th, 1893, whereby it provided that after the Levy Court had allowed the said delinquents, any of them who wished could go before the designated collectors and pay their tax for 1892 and be assessed and put on the duplicate of 1893. To get on the assessment of 1893, and be able to qualify as an elector in 1894 by paying the tax of 1893 was, so far as these contestants were concerned, the only purpose of the act of April 14th, 1893. To qualify to vote in 1894 the '92 delinquent must not only exercise his option to pay the tax of '92, but he must also be assessed and pay the tax of 1893.

*Vandegrift*, for the respondents, after reviewing the authorities, contended that:

It appears in this case that the petitioner is claiming to be registered as a qualified voter upon a receipt which he calls a tax receipt, paid under the provisions of the act of April 14th, 1893.

Our contention in regard to this act is that it was passed for the purpose of allowing those who had been returned as delinquents in March, 1893, and their taxes extinguished and their right to be placed upon the assessment list for twelve months cancelled, to be replaced on the assessment list for 1893 and thereby be able to vote by paying their taxes in 1894.

The reason for the act of April 14th, 1893, was that the State of Delaware wanted to give every person the opportunity to vote in 1894 by getting upon the assessment of 1893, and it extended this right to the petitioner and men of his kind, although they had refused to pay their taxes in 1892, when they thought that they could escape the tax in 1892 and still be put on the assessment and

have as much right at the election window as others who paid their tax in 1893.

It has been decided by the Court of Errors and Appeals in this State and is also specified in the Constitution of the State that every man who exercises the elective franchise shall do so only in the event of his bearing his share of the expenses of government.

The petitioner and others of his kind cannot commend themselves to the conscience of the Court, for the reason that they not only endeavored to and did escape the payment of any tax in 1892, but the State of Delaware, with a magnanimity that was worthy of its good name, said: "Notwithstanding you have dodged your responsibility in 1892, when you thought you could do it and still have the right to vote, yet we will allow you to get upon the assessment of 1893 and thereby vote in 1894 if you will pay your taxes for 1893." But as they avoided the duty of paying their taxes in 1892, so did they when placed upon the assessment list by an extra act of the Legislature again avoid the payment of their taxes to the State in the spring of 1894 for the year 1893.

Now, all this shows that these people do not come into this Court with clean hands. Wherever they have been able to dodge a tax they have done so; and now they come in and claim that the money which they paid to meet the expenses of getting them back upon the assessment list is a tax and will entitle them to vote.

Let us see if this is such a tax as is contemplated by the Constitution, which says that as one of the qualifications of a voter he shall have paid a tax within two years which shall been assessed at least six months. Again, the definition of a tax is that it is an enforced contribution, that it is an exaction of money for the purpose of defraying the expenses of the government, that it is a burden or charge upon the citizen.

The money that these men have paid, because of which they are now asking to vote, is not a tax for the reason that the act particularly states that the collector shall receive it if they wish to pay, and if they do pay that their names shall be then placed upon the assessment list of 1893. Thus it will be seen that any pay-

ment by them under this act was entirely voluntary, and there was no power on the part of the collector to enforce payment of it by seizing their goods or imprisoning their bodies, as is the case in the collection of all other moneys of the government properly known as taxes.

It will, therefore, be seen that the primary object of this law was that these men should be placed upon the assessment list, which they had voluntarily placed themselves in a position to be stricken from by not contributing their share towards defraying the expenses of government. Therefore, if this money paid by these delinquents to the persons designated to receive it was not an enforced contribution from them but was paid voluntarily, it lacks the essential qualities of a tax, and is not the payment of a tax as prescribed by the Constitution; for the tax that is therein prescribed is the enforced tax that no citizen has the right to escape the payment of—a tax for the payment of which his property or his body may be taken.

The act creating the Board of Registration says that they are created for the purpose of ascertaining who are the qualified voters, and specifies that they shall determine the same under the Constitution and laws of the State. It further says that they shall have the right to summon witnesses and hear evidence, and that to this end they have the right to issue a summons and have their process served by the strong arm of the sheriff or of the county constable, and further than that, that when they have so considered and inquired into the facts before them, they shall adjudge the voter to be either a qualified voter or not. It further provides that they shall ascertain whether the person presenting himself to be registered as a qualified voter has paid a county tax as prescribed by the Constitution.

The whole trend of this act is that this Board of Registration which sits as a Board of Appeal from the individual registrars, shall sit as a judical body to pass upon the qualifications of those who come before them; and numerous authorities have been cited here to show that when they have exercised this discretion to the

best of their ability, there is no appeal therefrom, unless it is given in explicit terms in the act, and no such appeal is therein given.

If it were possible for every one dissatisfied with the decisions of the Board of Registration all over this State to come into this Court and ask it to decide whether these registration officers had done their duty, it would mean that this court would not only be flooded with an amount of litigation that it could not attend to, but it would mean also that the rights of the people in this State would be prejudiced, and that the Superior Court of this State would be the board determining who are the qualified votes, instead of the duly constituted Board of Registration.

As the law-making power has vested in these Boards of Registration the right to determine who is the qualified voter, it does not lie with this court, or with any other body except the Legislature, to change the law and say that the Board of Registration is not after all, the body to determine who are qualified voters, but that that duty has been thurst upon, or assumed by the superior court.

All this matter was settled in an opinion delivered by Chief Justice Gilpin in 4 Harring.; and it was also settled, less than a month ago, in an opinion delivered by this court in Sussex County.

The opinion of Chief Justice Gilpin was, of course, before boards of registration were created; but the election officers who sat in his day to determine upon the qualifications of a man who presented himself to vote, exercised exactly the same powers and functions as are now exercised by the Boards of Registration. They determine to-day whether a man is a qualified voter or not, and if he is such a qualified voter, and they so designate him, he has the right to vote on election day. Therefore, the Boards of Registration having the same powers that the election officers had then, what do we find Chief Justice Gilpin saying? He said that these men exercised judicial functions, and that those judicial functions could not be inquired into unless they exercised them fraudulently, in which event the officer so acting would be liable to in-

dictment and also to civil action. And such is the provision of the law if these Registrars act fraudulently.

But there is not in this petition an allegation, nor has any word been heard from the other side to the effect that any of these men have acted fraudulently; nor could such a charge be truthfullly made.

This Court in Sussex County laid down no new law when they decided that when the Boards of Registration, acting under the provisions of law, passed upon the questions necessarily coming before them they were performing judicial functions and that a writ of mandamus would not lie; that the way to reach them was by indictment; that any one who believes himself wronged by them has a right to bring a civil action against them for damages.

I should have been willing to have rested this case entirely upon the decision in Sussex of *Hastings vs. Henry*, and have made no argument at all, except for the eminence of the counsel who are now contending before the court for the petitioner.

It is a well known rule of law that a decision once rendered shall stand until it is overruled by the Court of Appeals. They knew of the Sussex opinion. They have come in here and have yet failed to mention it, although it was within their knowledge. The cases that they have produced here from other states have been based upon statutes, which statutes it was their duty, in fairness to the court, to bring with them when they brought their decisions. But they produced the decisions here and then left us to produce the statutes, and the statutes never would have been produced if we had not brought them.

And yet as soon as they are brought here and examined, it is found that every case they depend upon to sustain their arguments and their standing in this court, is destroyed as an authority, when the statutes upon which they are founded are read before the court.

So that every case that they have cited has thus been wiped out as an authority, yet they stand here claiming a right which they knew this court had long since decided.

So far as the case in 3 Harrington is concerned, upon one page

of which my venerable friend dwelt for two and one-half hours, it was not an adjudication of the question now before the Court; the case passed off upon another point. But so far as the law of mandamus was there treated of, it was in regard to corporations; and was therein well said, and as is well known, under the law of England the Courts had jurisdiction over corporations; and it has been shown by authorities cited by us that they stand on a different plane from any other class, so far as the law of mandamus is concerned.

My venerable friend on the other side has also seen fit to speak most slightingly of these gentlemen who constitute the Boards of Registration by referring to them as sitting upon gum logs deciding law. But I beg to call the attention of the Court to the fact that men in all paths of life find that questions of law are constantly mixed with questions of fact and must be decided. I beg also to remind the Court that it has been but a day in history since men not learned in the law sat upon this bench and decided questions in litigation, as they do still in the great State of New Jersey; and if the old maxim that law is common sense is still applicable—and I believe it is—there is no great hardship in it.

It will, therefore, not do to disparage men and say that the Legislature cannot invest them with judicial functions, because forsooth they are not lawyers. I apprehend that if it requires that a man shall be learned in the law to act as a member of the Board of Registration, the State cannot supply the demand, nor indeed would it be advisable that such should be the case.

It has been the practice throughout the history of this State that the election officers should pass upon all questions coming before them touching the qualifications of voters; and these registration officers have exactly the same functions under this law. It lies with these eminent gentlemen for the first time to question the right of these election officers to do so.

I think, therefore, there can be no doubt, not only upon reason, but also upon usage and upon authority, that these officers of the State must exercise these judicial functions with which the act

clothes them; and if there is to be any change in that law it lies with the Legislature to make it and not with this Court.

Coming now to the question as to whether if the writ of mandamus should issue in this case, it would or would not be effective, the Court will not issue this extraordinary writ if it would be futile so to do, nor will it issue this writ to compel a man to do a thing which, if he did it without the writ, would be unlawful.

This is the condition of these respondents. The law provides that when they have held their registration, they shall compare their registers, certify to the same under oath and within three days give one copy thereof to the sheriff of the county, and that he shall within three days pass it on to the inspector who shall hold the coming election. These respondents in compliance with that law, completed their duties, and before the service of process upon them in this case had turned these books over to the sheriff of this county, and the three days have now more than expired. The sheriff is not made a party to these proceedings, and if your honors should order this Board of Registration to change these books— thus substituting your judgment of what is a qualified voter for the judgment of the board, where the Legislature has placed it—you would be directing them to do something which it is beyond their power to do of their own motion. Besides, the act creating this board imposes upon them a penalty for in anywise changing or altering these books after the duties prescribed are fulfilled.

Our learned friends have neglected to make the sheriff a party, the books are in his hands, and will now soon pass on, if they have not already done so, to the man who shall use them on election day. The Board of Registration, so far as its right to sit as a board to qualify people to vote at the coming election, is "*functus officio.*" There is no law by which they could be convened; and any meeting they would now hold, whether under the order of this court or otherwise, would be unlawful. And we have authority upon authority here to show your honors that the writ of this Court wil not issue to compel the doing of an unlawful act. Yet our eminent friends are eloquent in their advocacy of such a course; and

they have argued it strenuously notwithstanding the fact that they have failed to make the sheriff a party to these proceedings.

Therefore, I claim that these petitioners have not paid a tax such as contemplated by the Constitution and laws of this State; that they have dodged their share of the burdens of the government wherever they could and therefore do not come in here with clean hands; that these election officers are invested with judical functions by the Legislature and that in the exercise of those functions they cannot be questioned by this or any other court; that such has been the decision of all courts in this country from the Supreme Court of the United States down; that this power will remain with them until the Legislature may see fit to change the law, and if it can be brought in here it will be transferring the ascertainment of the qualification of voters from the hundreds of registration places throughout this State to the Superior Court of the State; that in coming here as they have, they not only have produced no authority worthy of the name, but they have flown directly in the face not only of the past decisions of the State, but of a decision rendered in Sussex county within the past 30 days by this very Court; that even if they were properly in this Court, they have not made the proper allegations in their pleadings, nor have they made the proper parties thereto, nor brought them within the time necessary to give them standing here; and as I have before stated, it is only by reason of the eminence and ability of the counsel in the case that I have felt warranted in dignifying this proceeding with an argument in reply.

*Higgins*, for relator: The main question raised is whether they can perform the duty directed by the Court. The board has three days within which to do its work and on the day following the completion. The whole act is directory and not mandatory. The people cannot be deprived of their right to vote on any such pretext. The day following the last day of registration was Sunday and nothing could legally be done on that day. The work of comparison must have been done on Saturday and the books returned

to the Sheriff. Within three days the Sheriff must return the books to the Inspector of Election, who is an Associate Registrar, who is the man who had them before they were given to the Sheriff. The books by this time should be back in the hands of the Associate Registrar. He is subject to the command of the Court. The Registrar has his books and the Inspector has his and they are the two officers in the power of the Court.

The petitioner stands on the facts of this case. In the cases quoted by the respondents were cases where a board had dissolved before the writ was framed. These men "skedaddled" after the writ was framed. These parties who were served with the writs now have the books.

There is no force in the argument that the board has dissolved. The Registrars and Inspectors hold the books. They were in their hands when the petition was filed and they knew of the case being filed. The third member of this board is also an election officer, so that these parties all have continuous powers about this subject matter. Now they are in the same case they were before and the books are in their hands. There is nothing to prevent these men making the entries if the Court so directs.

The intent of the act is to prevent fraud, accident or mistake. This is said in so many words in the act. The purpose of the act to determine more completely and full the qualifications of voters to prevent fraud. In deciding this case the Court will take into consideration the intention of fraud.

The question is whether the judgment of the Registrars is final. The writ ought to issue, and the main reason goes beyond this contention of the other side, and that is that when a man has a legal right to vote the duties of a Registrar are ministerial. The case is strong. There was as complete a right to register in this petitioner as there is by any one connected with the case. The so-called question as to the legality of the tax paid does not deserve the dignity of being called a pretext. It was a tax levied by the State, collected by the county, put into its treasury and appropriated. The raising of a question of law does not make the duty

of a Registrar judicial. His duty is ministerial or judicial as the Court may decide.

It is alleged that the tax is not one in the contemplation of the constitution. It is fair to say that all compulsion to pay taxes was taken off in 1873 from the poll taxable. The collector is the judge of whether the tax can be collected. The policy has been, come forward and pay or be shut out, and the ones who paid the tax in question were as much under compulsion to pay as they were under any of the other laws passed since 1873. This petitioner was properly assessed in 1892. He was returned as a delinquent, but a new law was passed extending the time in which this man could pay his tax. Disfranchisement is dignified as a penalty of heavy moment; it is the only penalty which the constitution of this state imposes.

It is contended that the Legislature had no right to extend this time. The Legislature itself said it did not intend to disfranchise men. It then said to the Clerk of the Peace, prepare a list of delinquent taxables and let the collector receive them. The other side says it is not a tax and was not assessed. It was simply collecting the tax of 1892, and it was assessed then. The Legislature imposed the tax on the assessment fixed and the rate decided upon by the Levy Court. The other side shied around this matter.

This was a county tax assessed at least six months before the election and paid within two years. If this is not a tax then the Legislature has no power to make a tax. No one will dispute that it has. The only argument introduced to show that this was not a tax was something about intention. The case all arises from this. Every man who paid that tax had as complete a right to vote as a man who had paid any other tax, and to say that an officer has the right to refuse his vote is to say that an election officer has the right to refuse the vote of any one.

In this case the only question is in regard to the constitutionality of the tax. All the constitutional qualifications of this petitioner existed and can not be disputed. It was a question of law alone, and every question of fact was taken from the Board of

Registration. The Sussex County case was different. The Court in that case decided that the case was so imperfectly stated that the court did not know what the question was. The board could have decided a question of fact or a question of mixed law and fact.

The law in this case is settled and the work ordered by the Court can be completed before the election. The Court has power to grant the writ on ministerial bodies, or on *quasi*-judicial ones, where their duties are ministerial. There are nothing but ministerial duties in this case.

No Board of Registration has a right to deny a man the right to vote, because its members do not understand the law. It is the duty of the Registrars to enter names, etc., and their duties are all specified in the act. There was nothing in the case for the Registrar to act upon. The right of the petitioner to be registered was plain.

The petitioner asks that the Registrars be compelled to perform an act. It is simply giving the judgment of the Court that these men obey the law and register these men as they have a right to be registered.

GRUBB, J., (presiding in the absence of LORE, C. J.) delivered the opinion of the Court:

Owing to the unavoidable absence of the Chief Justice, the duty is devolved upon me to announce that after a careful consideration of this case we are unanimously of the opinion that the established rules and principles of law which govern the Court in granting or refusing relief by mandamus will not permit this Court to award the peremptory writ prayed for by the relator; and on the ground that in our judgment, in view of the law and facts presented in this particular case said writ if granted would prove nugatory and unavailing.

It is, therefore, ordered by the Court that the rule to show cause why said peremptory writ should not issue be discharged.